[Cite as *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,* 139 Ohio St.3d 193, 2013-Ohio-4543.]

DUBLIN CITY SCHOOLS BOARD OF EDUCATION, APPELLEE, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES;

EAST BANK CONDOMINIUMS II, L.L.C., APPELLANT.*

[Cite as *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision,*
139 Ohio St.3d 193, 2013-Ohio-4543.]

*Taxation—Valuation of real property—Burden of proof—Burden to present competent and probative evidence—Board of Tax Appeals acted unreasonably and unlawfully in reinstating county auditor's valuation.*

(No. 2012-1432—Submitted June 4, 2013—Decided October 16, 2013.)

APPEAL from the Board of Tax Appeals, Nos. 2009-Q-1282

through 2009-Q-1301 and 2009-Q-1408.

_____

**O'DONNELL, J.**

**{¶ 1}** East Bank Condominiums II, L.L.C. ("East Bank"), appeals from a decision of the Board of Tax Appeals ("BTA") reversing the property valuation of the Franklin County Board of Revision regarding 21 condominium units and reinstating the county auditor's valuation of those condominium units as requested by the countercomplaints filed by the Dublin City Schools Board of Education. Many of the 21 units remained unfinished to varying degrees as of the 2008 tax lien date. Specifically, we are concerned with whether the BTA properly utilized the auditor's valuation of the 21 units when the only evidence in the record appears to negate the auditor's determination. Because the property owner presented expert evidence of valuation and because the board of education failed to present any evidence, we reverse the determination of the BTA and establish the 2008 valuation in accordance with the property owner's evidence of $3,100,000.

_____

*Reporter's Note: See opinion upon reconsideration that appears at 139 Ohio St.3d 212, 2014-Ohio-1940, ___ N.E.3d ___.

**Factual Background and Procedural History**

{¶ 2} East Bank began construction of the East Bank II condominium complex in 2006. The business plan involved first completing the construction of the building's infrastructure and then completing each of its 28 condominium units to suit the buyer. According to East Bank, as of January 1, 2008, the tax lien date, three of the 28 units were completed and sold, four units were finished but unsold, and 21 units remained unsold and unfinished.

{¶ 3} The Franklin County auditor assessed the true value of each parcel individually for the tax year 2008 and determined that the aggregate true value of the 21 units was $8,139,300. East Bank objected and filed complaints for each of the unfinished and unsold units, challenging the valuation of the property with the board of revision. Subsequently, the school board filed countercomplaints seeking to retain the auditor's valuation of the condominium units.

{¶ 4} At the board of revision hearing, East Bank presented the testimony of East Bank managing partner George Babyak, as well as the appraisal report and testimony of Thomas Horner. Although an attorney representing the board of education appeared at the board of revision hearing and cross-examined Babyak, the board of education did not present any witnesses or additional information regarding the valuation of the property.

{¶ 5} Thus, the only evidence of value presented at the hearing came from Horner's appraisal and testimony. Using a "condominium analysis," Horner opined that the 21 units had a "net present market value" or "as-is value" of $3,100,000. Horner testified that he considered the 21 units as a "single economic unit" because they are "owned by one owner" and "[t]hat owner can only sell all units at one time to one investor." He utilized a comparable sales analysis using condominium sales and marketing activity of East Bank I and East Bank II and then made reductions based on the estimated cost to finish the remaining units. This analysis yielded "gross sale proceeds" of $6,492,294. Considering the units

2

to be a "single economic unit," Horner applied what he called a "bulk discount" to arrive at an estimated value of $3,100,000, which is approximately 48 percent of $6,492,294.

{¶ 6} After its review, the board of revision accepted Horner's valuation of $3,100,000 as the total fair market value for the 21 units, stating, "We were given no additional information on behalf of the county complainant school board in this matter, and * * * we recognize Mr. Horner as being an expert in the area of real estate appraisal." The school board then appealed the board of revision's decision to the BTA.

{¶ 7} At the BTA hearing, East Bank once again presented Babyak and Horner as witnesses. At that time, Horner had additional data from condominium sales occurring in the four-year period after the tax lien date. He testified to a revised cash flow analysis using the actual historical sales, which included investor discounts for some units ranging from $75,000 to $105,800. Taking into account the various investor discounts and the construction costs to complete the units, he retrospectively concluded that the cash flow analysis resulted in a value of $2,900,000.

{¶ 8} Although the board of education's attorney cross-examined Babyak and Horner during the BTA hearing, the school board did not present any witnesses, evidence of its own valuation, or evidence in support of the auditor's valuation.

{¶ 9} After reviewing the evidence, the BTA concluded that East Bank "failed to present competent and probative evidence to either this board or the BOR in support of its requested decreases in value." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408, 2012 WL 3166815, *6 (July 24, 2012). Specifically, the BTA found that Horner's use of the bulk discount was improper under *M/I Homes of Cincinnati, L.L.C. v. Warren Cty. Bd. of Revision*, BTA No. 2009-V-3796,

2010 WL 3724159 (Sept. 21, 2010). *Id.* at *5. It further determined that it could not rely on the rest of Horner's appraisal report for multiple reasons. *Id.* First, the BTA took issue with the fact that Horner's calculation of each parcel's value was based on comparable sales of units within East Bank I and East Bank II, but the report contained withdrawn listings and listing prices—not sale prices—of the East Bank I units. *Id.* Second, it found no evidence that the "cost to finish," which Horner deducted from each unit's estimated retail price, conformed to market costs. *Id.* And third, in response to East Bank's argument that the auditor had assessed the units as finished units as opposed to unfinished units, the BTA held that it could not make the appropriate adjustments to the valuation since there was no evidence as to the completion percentage of each unit. *Id.* at *6. It therefore reversed the board of revision's adjustments and reinstated the auditor's valuation of the 21 units. *Id*.

{¶ 10} East Bank appealed the BTA's decision to this court, contending first that the BTA's decision is unlawful and unreasonable because it reverted to the auditor's value when the board of education had introduced no evidence in support of the auditor's valuation. Second, East Bank argues that the BTA did not hold the board of education to its burden of proof and that it improperly shifted the burden of proof to East Bank. Third, East Bank asserts that the BTA erred as a matter of law by precluding the use of bulk discount factors in East Bank's valuation and that the BTA acted unreasonably and unlawfully by not valuing the 21 units as a single economic unit. Next, East Bank maintains that the record demonstrates that the units were unfinished on the tax lien date and also establishes the costs to complete the units, and it urges that the BTA acted unreasonably and unlawfully in not applying a discount based upon unfinished property. Finally, East Bank argues that the BTA abused its discretion in rejecting the board of revision's determination that East Bank presented the requisite evidence of value.

{¶ 11} In response, the board of education asserts that Horner's appraisal is an "investment value appraisal," which "does not constitute competent and probative evidence of the true value of real property." The board of education further argues that because East Bank did not satisfy its initial burden to prove that Horner's appraisal evidenced the true value of the property, the BTA did not improperly shift the burden of proof to East Bank. The board of education also maintains that "[t]he BTA is not required to accept the opinion of an appraiser concerning the cost to finish a condominium unit without any facts or figures to support that opinion or that the true value of the unit must be reduced on a dollar-for-dollar basis by the amount of the costs to finish the unit."

{¶ 12} Thus, we must decide whether the BTA properly reinstated the auditor's valuation of the condominium units at issue.

### Standard of Review

{¶ 13} Pursuant to R.C. 5717.04, this court reviews decisions of the BTA to determine whether they are "reasonable and lawful." Our review of a question of law is not deferential but de novo. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. This court will affirm a decision of the BTA only if the BTA correctly applies the law. *HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13. And, we will uphold the BTA's determination of fact if the record contains reliable and probative evidence supporting the BTA's determination. *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14.

### Burdens of Proof

{¶ 14} We have established that the taxpayer bears the burden to establish the right to a deduction and a taxpayer is " 'not entitled to the deduction claimed merely because no evidence is adduced contra his claim.' " *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-

Ohio-1948, 865 N.E.2d 22, ¶ 15, quoting *W. Industries, Inc. v. Hamilton Cty. Bd. of Revision*, 170 Ohio St. 340, 342, 164 N.E.2d 741 (1960).

{¶ 15} When a party appeals a board of revision's decision to the BTA, the appellant, whether it be a taxpayer or a board of education, has the burden to prove its right to a reduction or increase in the board of revision's determination of value. *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). To prevail on appeal before the BTA, the appellant must present "competent and probative evidence" supporting the value the appellant asserts. *Id.*

{¶ 16} In this case, East Bank had the burden to prove its right to a reduction when it challenged the auditor's valuation of the 21 units before the board of revision. *See Dayton-Montgomery* at ¶ 15. To meet this burden, East Bank presented testimony from its managing partner and an appraiser. The board of revision adopted East Bank's valuation, thereby shifting the burden of going forward with evidence to the board of education on appeal to the BTA to present "competent and probative evidence to make its case." *Columbus City School Dist.* at 566. However, the board of education did not present any evidence to support its own valuation or the auditor's valuation and instead chose to attack Horner's valuation through cross-examination. The board of education thereby failed to sustain its burden. Since the board of education failed to meet its burden on appeal and the only evidence in the record—the testimony of Babyak and Horner—negates the auditor's determination, we now turn to the question of whether the BTA acted reasonably and lawfully by reinstating the auditor's valuation.

### Reinstatement of the Auditor's Valuation

{¶ 17} In *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 31, we explained: "[T]he auditor's initial determination of value for a given tax year

possesses an increment of prima-facie probative force." But, when a taxpayer presents evidence contrary to the auditor's valuation and no evidence is offered to support the auditor's valuation, the BTA may not simply reinstate the auditor's determination. *Dayton-Montgomery*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 27; *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, ¶ 11-12. Instead, "once the BTA had determined that the record contained evidence tending to negate the county's original valuation, the BTA's duty was to 'determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property.' " *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 26, quoting *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298 ("*Colonial Village* I"), ¶ 25. Here, the board of education produced no evidence to support its valuation or the auditor's valuation of the units, nor did it identify the procedures or methods the auditor used in valuing those units.

{¶ 18} In *Dayton-Montgomery*, the port authority challenged the auditor's valuation before the board of revision, which slightly decreased the value of the property. After rejecting the port authority's valuation as "incomplete" and the board of revision's adjustment as lacking a "credible explanation," the BTA had reinstated the auditor's valuation. *Id.* at ¶ 9. In reversing, we held that

> when the evidence presented to the board of revision or the BTA contradicts the auditor's determination in whole or in part, and when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination. Whenever it does so, the BTA is acting unlawfully

> by making a finding of value that is affirmatively contradicted by the only evidence in the record.

*Id.* at ¶ 27.

{¶ 19} We reaffirmed this principle in *Bedford.* Relying on our holding in *Dayton-Montgomery*, we found that the BTA's reinstatement of the auditor's determination of value as the default value was "not justified, because the taxpayer had presented evidence contrary to the auditor's determination to the board of revision." *Bedford* at ¶ 12. We found that the evidence the board of education presented on appeal to the BTA, which simply consisted of testimony suggesting that the parcel at issue should be valued not individually but instead in conjunction with other parcels, "did not amount to independent evidence of value that would undermine the BOR's determination" and "did not support reinstating the auditor's valuation, because the auditor did not value the property in conjunction with other parcels any more than the BOR did." *Id.* at ¶ 13.

{¶ 20} During oral argument, the board of education directed the court to our decision in *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196 ("*Colonial Village* II"), to assert that if the evidence presented is not reliable and is not probative, then the BTA should revert to the auditor's valuation as the default value. The board of education's application of *Colonial Village* II to this case is misplaced. First, the facts of *Colonial Village* II are distinguishable from the facts of this case because there*,* the board of revision initially adopted the *auditor's* valuation. *Id.* at ¶ 18. Thus, after finding that the taxpayer had not met its burden on appeal, the BTA affirmed the conclusion of the board of revision in reinstating the auditor's valuation. In contrast, here, the board of revision adopted the *taxpayer's* valuation. Since East Bank presented competent, credible evidence of valuation and other evidence negating the auditor's valuation and the board of education did

8

not present any evidence to support its valuation or the auditor's valuation, the BTA abused its discretion in reinstating the auditor's valuation. Second, the board of education fails to recognize that while we stated in *Colonial Village* II that "the BTA is justified in retaining the county's valuation of the property when an appellant fails to sustain its burden of proof at the BTA," *id.* at ¶ 23, we then acknowledged that an exception to this general rule arises when the record affirmatively negates the validity of the county's valuation. *Id.* at ¶ 24. This case falls under that exception as well because East Bank established a different valuation and the board of education offered no evidence to support its valuation or the auditor's valuation.

**{¶ 21}** As in *Dayton-Montgomery* and *Bedford*, the BTA's reinstatement of the auditor's valuation was "not justified, because the taxpayer had presented evidence contrary to the auditor's determination to the board of revision." *Bedford*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, at ¶ 12. In *Vandalia-Butler*, we clarified our holding in *Bedford* and explained: "Even if some evidence tends to negate the auditor's valuation, it is proper to revert to that valuation when the BTA finds that the owner has not proved a lower value and there is otherwise 'no evidence from which the BTA can independently determine value.' " (Emphasis deleted.) *Id.*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, at ¶ 24, quoting *Simmons v. Cuyahoga Cty. Bd. of Revision*, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998). But here, evidence existed from which the BTA could independently determine value. It is clear from a review of the record that the auditor's valuation of the property was too high. Specifically, there is no evidence indicating that the auditor accounted for the unfinished state of the units or the units' depreciation in value due to market conditions, and the historical sales evidence provided by East Bank further contradicts the auditor's valuation.

**{¶ 22}** Under Ohio law, "[i]f a building, structure, fixture or other improvement to land is under construction on January first of any year, its

valuation *shall be based upon its value or percentage of completion as it existed on January first*." (Emphasis added.) Ohio Adm.Code 5703-25-06(G). East Bank asserts that the majority of the 21 units were 50 percent complete, two units were 60 percent complete, and two units were 80 percent complete.

{¶ 23} In response to East Bank's argument that the auditor assessed the units based on the full finished retail value of the units, the BTA held that "*no evidence* has been provided as to the completion percentage of each unit to allow this board to make appropriate adjustments to the properties' values." (Emphasis added.) *Dublin City Schools Bd. of Edn.*, 2012 WL 3166815, at *6. But this finding of the BTA contradicts the record, which contains evidence of completion percentages of the units. East Bank provided competent evidence as to the completion percentages. Horner accounted for these in his appraisal, and both Horner and Babyak testified regarding the unfinished state of the units. In addition, a review of the property record cards indicates that the auditor considered 16 of the units to be only 85 percent complete as of the tax lien date. However, the record is unclear as to whether the auditor made adjustments for the costs for completion in his valuation. Since the record contains evidence regarding the completion percentages and there is no evidence to demonstrate that the auditor actually factored the completion percentages into the assessed valuation, the BTA acted unreasonably and unlawfully in reinstating that valuation.

{¶ 24} There is also no indication that the auditor considered the property's depreciation in value due to the downturn in the economy. Horner's appraisal provides a "Residential Market Summary," which explains the substantial drop in "residential activity" for condominiums and single family homes between 2006 and 2007. Horner also testified that "[b]etween the time that this building was proposed, planned and built, the market dropped significantly." Further demonstrating the difficult market, East Bank in 2008 considered selling

10

the entire building, including the 21 condominium units at issue, because of the downturn in the economy. East Bank did not pursue the informal offers it received ranging from $1.5 million to $3 million, because these amounts would not have covered the loan value. Considering the market conditions presented before the board of revision and the BTA and the absence of any evidence in the record addressing whether the auditor took those market conditions into account, additional grounds exist for determining that the BTA unreasonably adopted the auditor's valuation.

{¶ 25} Lastly, the actual historical sales raise doubt as to the accuracy of the auditor's valuation. Many of the sales of East Bank II condominiums occurring after the tax lien date involved investor discounts ranging from $75,000 to $105,800. Using these sales figures and the actual construction costs to complete the units, Horner opined at the BTA hearing that the cash flow analysis resulted in a value of $2,900,000. This evidence further demonstrates that the auditor's valuation does not reflect the true market value.

{¶ 26} When confronted with such clear evidence negating the auditor's valuation, the BTA acted unreasonably and unlawfully in adopting the auditor's valuation rather than determining the taxable value of the property. It acted "unlawfully by making a finding of value that is affirmatively contradicted by the only evidence in the record." *Dayton-Montgomery*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 27.

### Conclusion

{¶ 27} When a board of revision adopts the valuation of property presented by the taxpayer over the auditor's valuation, the burden shifts to the contesting party on appeal to demonstrate the true value of the property. When the party challenging a board of revision's determination fails to present any evidence supporting its valuation or the auditor's valuation and the only evidence in the record negates the auditor's valuation, the BTA must determine if there is

sufficient evidence in the entire record for the BTA to perform an independent analysis. Here, the board of education did not present any evidence before the board of revision or the BTA. Thus, it failed to meet its burden. Because the evidence in the record negated the auditor's valuation of the East Bank property and because evidence existed from which the BTA could have conducted its own independent valuation, it acted unreasonably and unlawfully in failing to do so and in instead reinstating the auditor's valuation. Accordingly, we reverse the determination of the BTA and adopt the only evidence of valuation contained in the record presented by East Bank through its expert, resulting in a valuation of $3,100,000.[1]

Judgment accordingly.

PFEIFER, KENNEDY, and O'NEILL, JJ., concur.

O'CONNOR, C.J., and LANZINGER and FRENCH, JJ., concur in part and dissent in part.

———————————

**O'CONNOR, C.J., concurring in part and dissenting in part.**

{¶ 28} Although I agree with the majority that the Board of Tax Appeals ("BTA") erred by reinstating the Franklin County auditor's valuation of the 21 condominiums at issue in this case (at an aggregate value of $8,139,300 for tax year 2008), I do not agree that the case law compels us to order reinstatement of the decision of the county board of revision. I therefore concur in part and dissent in part.

**ANALYSIS**

{¶ 29} Appellant, East Bank Condominiums II, L.L.C., at the hearing before the board of revision, presented the appraisal report and testimony of

---

1. We need not consider whether the bulk sale approach was appropriate in this instance because we determine that the BTA acted unreasonably and unlawfully in not conducting its own independent valuation of the property taking into account the unfinished state of some, if not all, of the units, the depreciation in value, and the sales history.

Thomas Horner. The board of revision adopted Horner's appraisal's aggregate valuation of $3,100,000, which reflected not only an adjustment for the unfinished state of the condominiums, but also a decrease to 48 percent of what Horner termed the "gross sale proceeds" (sometimes called the "gross sale price") of the unfinished units. The BTA correctly found that although Horner's "bulk discount" is an appropriate appraisal method for financial institutions that lend to condominium development projects, it does not apply to appraisals of real property for tax purposes under Ohio law. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, BTA Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408, 2012 WL 3166815, *5 (July 24, 2012) ("We believe East Bank's reliance on * * * FIRREA guidance is misplaced; while it may be true that, for purposes of appraising properties for financing purposes, it is appropriate to apply a bulk discount, the present matter concerns appraisal for tax valuation purposes").[2] Moreover, the BTA has a duty to independently weigh evidence. That duty is critically important here because the deficiency in the Horner appraisal that the BTA identified is a legal flaw rather than a factual one, and therefore there was no necessity that the board of education present additional evidence to substantiate that flaw.

{¶ 30} I would affirm the BTA's decision to the extent that it rejected the bulk-sale approach to valuing the condominiums and thus dissent from the majority's acceptance of that method of valuation. However, I concur in the majority's conclusion that the BTA should have determined a discount for the unfinished states of the condominiums on the tax-lien date. To remedy that defect, I would reverse the BTA's reinstatement of the auditor's valuation and

2. FIRREA is short for the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, an act of Congress that in the wake of the savings-and-loan scandal of the 1980s enacted measures designed in part to improve the integrity of lending practices. *Herbst v. Resolution Trust Corp.*, 66 Ohio St.3d 8, 9, 607 N.E.2d 440 (1993).

remand this cause to the BTA for determination of a proper percentage discount as required by Ohio Adm.Code 5703-25-06(G).

**The Horner appraisal's bulk-discount approach runs afoul of the well-established economic-unit doctrine**

{¶ 31} Because this case involves the valuation of 21 condominium units as of January 1, 2008, the analysis must begin with the recognition that each unit constitutes a separate parcel, in spite of the fact that they all are contained in a common building. The division into separate parcels for property-taxation purposes is a requirement imposed by law. "Each unit of a condominium property * * * is deemed a separate parcel for all purposes of taxation and assessment of real property." R.C. 5311.11.

{¶ 32} In a county auditor's capacity as assessor of the real estate tax, the auditor is charged with the duty to "view and appraise or cause to be viewed and appraised at its true value in money, each lot or parcel of real estate." R.C. 5713.01(B). Read together, Article XII, Section 2 of the Ohio Constitution and R.C. 5713.03 require the auditor, when determining the true value of each parcel, to use either an actual arm's-length sale price showing the value of the property or an appraisal determining what that sale price would be. *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus; *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals*, 175 Ohio St. 410, 412, 195 N.E.2d 908 (1964); *see also Berea City School Dist. Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 269, 2005-Ohio-4979, 834 N.E.2d 782, ¶ 9-10. The Horner appraisal did not comply with this constitutional and statutory framework.

{¶ 33} In the valuation section of the appraisal report, Horner stated that his appraisal aimed at determining "a bulk purchase value [that] represents what the owner would sell all of the units to a single purchaser [for]." The report proceeded to explain that "[t]he investor," i.e., the bulk purchaser, would then be

14

"entitled to the future profit from the individual sales, but would also incur the cost of holding and selling the units during the absorption period." Given this premise for the appraisal, the BTA here justifiably relied on its earlier decision in *M/I Homes of Cincinnati, L.L.C. v. Warren Cty. Bd. of Revision*, BTA No. 2009-V-3796, 2010 WL 3724159 (Sept. 21, 2010), to characterize Horner's approach as "an analysis [that] arrives at an investment value, rather than real market value," of the condominiums as parcels of real property. 2012 WL 3166815, at *4. Simply stated, the Horner appraisal did not value the individual condominiums in terms of what they would ultimately have sold for in the market. Instead, the appraisal projected a bulk-sale price that a developer-buyer or an investor would have paid for all the units together. That bulk price would inevitably have been less than the ultimate sale price of the individual units, because a bulk purchaser would have paid only an amount that would have yielded a profit once the condominiums were sold individually. Thus, the actual sale prices were discounted to a current investment value, but our precedent is clear that it is the sale prices themselves that must be the properties' values for tax purposes.

**{¶ 34}** This discounting process becomes graphically visible later in the valuation section of the appraisal report, which shows the allocation of the "as-is price" to each condominium on a per-square-foot basis and then shows the discount taken for each condominium to 48 percent of that price. In addressing a similar type of appraisal, the Oregon Supreme Court cogently stated that because a developer's discount "reduces the market price of the properties by a rate of return based on expected profit, taking into account the expected time necessary to sell the lots," it does not "assess the value of the properties if put to their highest and best use, but reduces their value to arrive at the value of the properties considered as an investment." *First Interstate Bank of Oregon, N.A. v. Dept. of Revenue*, 306 Or. 450, 454-455, 760 P.2d 880 (1988).

{¶ 35} Additional evidence that the bulk-discount analysis does not indicate the tax value of the individual units is found in Horner's reliance on the FIRREA exhibit introduced at the BTA hearing. That exhibit includes a statement that for a condominium building with five units or more, a financing institution "may not use the aggregate retail sales prices of the individual units as the market value to calculate the [loan-to-value] ratio." That is the rule on which Horner's bulk discount is based. It states in so many words that the bulk-discount valuation is not equivalent to the sale price of the condominiums. However, the sale price must be the proper measure of value for tax purposes.

{¶ 36} Under certain circumstances, Ohio law may permit multiple parcels to be valued as a single economic unit. But those circumstances are not present here.

{¶ 37} For example, in *Park Ridge Co. v. Franklin Cty. Bd. of Revision*, 29 Ohio St.3d 12, 504 N.E.2d 1116 (1987), this court noted that an "economic unit" for tax-valuation purposes may in some situations comprise multiple parcels or a portion of a larger parcel, and stated the test for determining a property's status as an economic unit: "For tax valuation purposes, property with a single owner, *for which the highest and best use is a single unit*, constitutes a tract, lot, or parcel." (Emphasis added.) *Id*. at paragraph two of the syllabus. *See also Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 77 Ohio St.3d 402, 404-406, 674 N.E.2d 696 (1997) (citing and applying the *Park Ridge* syllabus). A determination to value a property as an economic unit therefore depends, as a matter of law, on a finding that the highest and best use of the parcels at issue consists of continued use under common ownership. On this record, the BTA was justified in not making such a finding. Indeed, no evidence in the record would have supported it.

{¶ 38} Far from furnishing support for such a finding, Horner's appraisal negates it. Several statements in the appraisal indicate that the ultimate sales of

the condominiums were anticipated to be as individual units.  Moreover, the section of Horner's appraisal specifically discussing highest and best use states that "[b]ased on those uses that are legally permissible, physically possible and financially feasible, the maximally productive use of the site involves 28 total living units."  Although this part of the appraisal does not explicitly state that the "living units" will be individually owned, the statement certainly does not assert that the highest and best use constitutes continued common ownership.  This case does not involve an apartment building, in which a single landlord owns the entire building and rents out individual units; this case involves condominiums.  Taken in context, the "highest and best use" determination must be that the condominiums will ultimately be individually owned and are not an economic unit.

{¶ 39} In addition to Horner's original appraisal, the majority refers to Horner's analysis of actual subsequent sales that he later offered at the BTA hearing as though that analysis somehow corroborates the propriety of the bulk discount in the original appraisal.  It does not.

{¶ 40} The majority fails to recognize that the subsequent-sale analysis merely repeats the very same flaw that the BTA identified in the original appraisal.  Once again, Horner does not value the individual units according to the price at which they would sell (or the price at which they did, in fact, sell).  Rather, Horner for a second time discounts from that "retail" sale price to determine what an investor would have paid in bulk on January 1, 2008, with a view to making a profit.  The bulk-sale price of $2,900,000 that Horner presented to the BTA turned out to be lower than the $3,100,000 projected in the original appraisal because the sale prices turned out to be lower than projected.

{¶ 41} On redirect examination during the BTA hearing, Horner confirmed this point.  He was asked whether the revised $2,900,000 figure "reduced lower the net present value [i.e., the bulk-discount valuation of

$3,100,000] you came up with in your original appraisal." Horner answered: "Correct." Moreover, Horner testified that the subsequent sales indicated "an average of $146 per square foot." That number, projected over the 42,627 total square feet of the 21 units still to be sold as of January 1, 2008, would have amounted to gross sale proceeds for all 21 units of $6,223,542 (as opposed to the gross sale proceeds of $6,492,294 projected in the original appraisal). Horner's revised "net present value" of $2,900,000 was about 47 percent of the gross sale proceeds of $6,223,542, just as the original appraisal's net present value of $3,100,000 was about 48 percent of $6,492,294. Thus, the flawed methodology did not change, even though subsequent sales were used.

{¶ 42} The BTA acted reasonably and lawfully in determining that the board of revision had erred by relying on the Horner appraisal's bulk-discount approach. I must dissent from the majority's conclusion to the contrary.

**Because the BTA's duty is to independently weigh the evidence,**

**it may reverse a decision of a board of revision even if**

**no new evidence is presented before the BTA**

{¶ 43} I also disagree with the majority's view that because the board of education presented no new evidence at the BTA hearing to controvert the Horner appraisal, the BTA was required to affirm the board of revision's decision to adopt that appraisal. This reasoning cannot be reconciled with the BTA's duty to perform a fully independent weighing of the evidence presented at all levels when determining the value of real property.

{¶ 44} Although the majority opinion cites *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, the holding in that case does not support the majority's analysis.

{¶ 45} In *Vandalia-Butler*, the property owner filed a complaint and presented evidence before the board of revision, just as in the present case. *Id.* at

¶ 3-4. The board of revision adopted a lower valuation based on the owner's evidence, just as in the present case. *Id.* at ¶ 6. At the BTA hearing, the board of education argued that the owner's evidence was insufficient, but it presented no new evidence, just as in the present case. *Id.* at ¶ 8-9.

**{¶ 46}** Although the BTA expressed reservations about the quality of the evidence the owner had presented to the board of revision, the BTA stated the issue as whether there was sufficient evidence to support the board of revision's determination. *Id.* at ¶ 9. The BTA ultimately adopted the board of revision's valuation in spite of its explicit reservations. *Id*. at ¶ 10.

**{¶ 47}** On appeal, we unanimously found error as a matter of law, vacated the BTA's decision, and remanded to the BTA for further proceedings. We stated that "the BTA's crucial error in this case lay in its exclusive reliance on the BOR's evaluation of the evidence rather than its own." *Id*. at ¶ 14. We specifically faulted the BTA for exercising excessive deference to the board of revision's decision. *Id.* at ¶ 19. On remand, we ordered the BTA to determine whether sufficient evidence permitted it to perform an independent valuation; if there was sufficient evidence, the BTA was to perform that valuation. If there was not, the BTA was to revert to the auditor's determination. *Id*. at ¶ 26-28.

**{¶ 48}** Our discussion in *Vandalia-Butler* of the independent role of the BTA should apply equally to the situation here. Although the unfinished state of the condominiums had to be taken into account when valuing them, the majority fails to recognize the validity of the BTA's reasonable and lawful rejection of the Horner appraisal's bulk-discount approach. The BTA's duty to independently weigh evidence permitted it to reject that bulk-discount approach regardless of whether the school board presented further evidence before the BTA, and its decision should be affirmed to that extent. Our precedent is clear and should be followed here.

**The BTA should have performed an independent determination of the discounted value of the condominiums because of their unfinished state**

{¶ 49} Finally, I concur with the majority that the BTA erred by failing to ensure that the value assigned to the condominiums reflected a discount based on their unfinished state as of January 1, 2008, the tax-lien date. But instead of requiring reinstatement of the board of revision's decision, which relied on the erroneous bulk-sale approach, this error calls for a remand to the BTA for a proper determination of the percentage discount required by Ohio Adm.Code 5703-25-06(G), which provides that "[i]f a building, structure, fixture or other improvement to land is under construction on January first of any year, its valuation shall be based upon its value or percentage of completion as it existed on January first."

{¶ 50} The property-record cards in this case set forth percentage-of-completion figures, but do not evidence whether the auditor properly applied a discount. Additionally, the Horner appraisal took into account the percentage of completion. I would remand to the BTA with the instruction that the BTA perform an appropriate reduction to account for the unfinished state of the condominiums, basing its finding on the entire record or, if need be, on additional evidence adduced pursuant to the BTA's authority to "make * * * investigation concerning the appeal" under R.C. 5717.01.

## CONCLUSION

{¶ 51} I concur in the majority's conclusion that the auditor's valuation was too high, but dissent from the remainder of the majority's opinion and its order that the board of revision's valuation must be reinstated.

LANZINGER and FRENCH, JJ., concur in the foregoing opinion.

_____

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 52} I join the separate opinion of Chief Justice O'Connor concurring in part and dissenting in part. I also write to address additional concerns I have with the majority opinion.

{¶ 53} I agree with the majority that the Dublin City Schools Board of Education failed to meet its burden of proof before the Board of Tax Appeals ("BTA"). I also agree that the BTA erred when it adopted the auditor's valuation. I respectfully disagree, however, with the majority's analysis as to why the board of education failed to meet its burden of proof. The majority opinion implies that an auditor's appraisal can never, by itself, constitute probative evidence of value. Because this holding contradicts our case law, I cannot endorse it.

{¶ 54} I also respectfully dissent from the majority's decision to adopt East Bank's valuation of the property, rather than remand this case to the BTA for an independent determination of value. The majority accepts East Bank's valuation without reason or analysis, and our case law requires a remand.

## ANALYSIS

### Burdens of Proof

{¶ 55} In this case, the board of education sought retention of the auditor's property valuation. This valuation was based on the auditor's separate appraisals for the condominium units. All 21 appraisals were in the record before the BTA. When the board of education appealed to the BTA, however, it produced no additional evidence supporting the auditor's appraisals. Based solely on the fact that the board of education produced no new evidence, the majority concludes that the board of education failed to meet its burden of proof before the BTA.

{¶ 56} The majority's conclusion assumes, incorrectly, that a BTA appellant seeking retention of an auditor's valuation must necessarily support the auditor's valuation with additional proof. This assumption contradicts our

precedent. A party need not, as a matter of course in every case, confirm an auditor's appraisal with further evidence in order to meet its burden of proof. *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196 ("*Colonial Village* II"), ¶ 30-31 ("we reiterate that the county does *not* have the affirmative burden to establish as a general matter the accuracy of any appraisals that underlie its valuation of the property" [emphasis sic]); *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 24, fn. 3; *Simmons v. Cuyahoga Cty. Bd. of Revision*, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998). To the contrary, an auditor's appraisal can stand alone as probative evidence of value. *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 31 ("the auditor's initial determination of value for a given tax year possesses an increment of prima-facie probative force").

**{¶ 57}** We unanimously endorsed this principle in *Vandalia-Butler*. There, we explained that an appellant need not always affirmatively prove the accuracy of an auditor's valuation to the BTA; the appellant's burden may be merely to show that the board of revision erred. *Id.* at ¶ 24, fn. 3. *Vandalia-Butler* dealt with a nearly identical set of facts: a local school board sought retention of the auditor's valuation, lost at the board of revision, appealed to the BTA, and produced no new supporting evidence to the BTA. *Id.* at ¶ 3, 8-9. On appeal to this court, the county-appellee advanced the same argument the majority accepts now—that the school board failed to meet its burden of proof at the BTA because it did not put forth any additional support for the auditor's valuation. *Id.* at ¶ 24, fn. 3. We dismissed this argument, stating:

> [We] reject the county's contention that the school board had the burden to prove the validity of the auditor's valuation at the BTA.

> While it is true that the party that appeals to the BTA in a valuation case typically does bear the burden of showing a different value, * * * the school board's appeal in this case rested upon a claim of legal error. In prosecuting such a claim, the appellant's burden is to show the presence of reversible error, and proof of a new value may not be necessary when the appeal seeks a return to the auditor's valuation.

(Citation omitted.) *Id.* Our precedent is clear. A party need not always offer additional support for an auditor's appraisal.[3] The appraisal can, by itself, constitute probative evidence of value.[4]

{¶ 58} There are, of course, exceptions to this rule. *See, e.g., Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 24. This case presents one such exception: an auditor's valuation cannot stand alone when the record affirmatively negates the validity of the auditor's appraisal. *Id.* at ¶ 27; *Colonial Village* II, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, at ¶ 24. In that scenario, a party must produce proof beyond the auditor's appraisal. *Dayton-Montgomery* at ¶ 27, 30. Here, we need not even consider East Bank's evidence to determine that the auditor's appraisal is invalid. The appraisal is deficient on

---

3. During oral argument, East Bank's counsel conceded that an auditor's appraisal can be valid on its face, without supporting evidence.

4. I also stress that an auditor's appraisal does not lose probative value merely because a board of revision rejects it. A board of revision's decision "lack[s] * * * any presumption of validity." *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 16, 665 N.E.2d 1098 (1996). The decision does not, therefore, set a baseline that the parties start from once they reach the BTA. Nor does it impose a handicap that the BTA appellant must overcome with new evidence. The BTA reviews cases de novo, without giving any deference to what the board of revision decided. *Id.* at 15; *Vandalia-Butler*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, at ¶ 13-14, 19.

its face. Specifically, the property-record cards do not indicate whether the auditor applied the percentage-of-completion discounts required by Ohio Adm.Code 5703-25-06(G). Because of this deficiency, the board of education had to produce additional support for the auditor's valuation. It did not, thereby failing to meet its burden of proof.

{¶ 59} I therefore concur with the majority in two respects: (1) the board of education had to produce additional support for the auditor's appraisal and (2) because the board of education did not produce this support, it did not meet its burden of proof. I cannot, however, join the majority's analysis as to why the board of education had to produce more evidence. The majority opinion suggests that a party must *always* produce additional support for an auditor's appraisal. This approach contradicts our precedent. I would hold that the board of education had to produce more evidence in this case only because the auditor's appraisal was deficient on its face.

### *Remand Is the Proper Remedy*

{¶ 60} Because the auditor's appraisal was deficient on its face and the board of education presented no evidence to cure the deficiency, the BTA erred in adopting the auditor's valuation. *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 567, 740 N.E.2d 276 (2001) (the BTA cannot adopt a value that is unsupported by the record); *Dayton-Montgomery* at ¶ 27 ("when the evidence * * * contradicts the auditor's determination in whole or in part, and when no evidence has been adduced to support the auditor's valuation, the BTA may not simply revert to the auditor's determination"). Instead, the BTA should have conducted its own analysis of the evidence and independently determined the taxable value of the property. *Vandalia-Butler*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, at ¶ 26 ("When there is sufficient evidence to permit the BTA to perform an independent valuation * * * the BTA must do so"); *Colonial Village, Ltd. v. Washington Cty.*

*Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298 ("*Colonial Village* I"), ¶ 23-25. As the majority points out, at ¶ 23 of the opinion, the record appears to contain enough evidence for the BTA to independently determine value. And as the chief justice notes in her separate opinion at ¶ 50, the BTA may always order the presentation of additional evidence if necessary. R.C. 5717.01; *Columbus City School Dist.* at 567 (remanding to the BTA for an independent determination of value and noting that under R.C. 5717.01, the BTA " 'may order the hearing of additional evidence, and may make such investigation concerning the appeal as it deems proper' ").

{¶ 61} The appropriate remedy for the BTA's failure to conduct an independent valuation is, not surprisingly, a remand for the BTA to conduct an independent valuation. *Colonial Village* I at ¶ 1 (ordering remand for the BTA to conduct an independent valuation of the property after the BTA had unlawfully upheld the auditor's valuation); *Vandalia-Butler* at ¶ 27 (remanding because the BTA did not conduct an independent analysis of value); *Dayton-Montgomery*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 28 (remanding for the BTA to independently determine value). Instead of ordering this remand, though, the majority summarily resolves this case by adopting the same valuation the board of revision adopted—East Bank's $3,100,000 appraisal. But the majority opinion offers no explanation as to why East Bank's valuation is correct or as to how the majority arrived at this conclusion.

{¶ 62} The majority could not have accepted East Bank's valuation simply out of deference to the board of revision. Decisions of boards of revision "lack * * * any presumption of validity." *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 16, 665 N.E.2d 1098 (1996); *see also Dayton-Montgomery* at ¶ 24. This court would commit serious error if it accepted East Bank's evidence "on the grounds that the board of revision was persuaded" by

that evidence. *Vandalia-Butler* at ¶ 14. Doing so would constitute "the very deference that the case law prohibits." *Id.*

{¶ 63} East Bank asserts that automatic deference to the board of revision is appropriate here because the board of education did not meet its burden of proof at the BTA. This argument is unpersuasive. The mere fact that the board of education failed to prove the legitimacy of its preferred value tells us only that the board of education's value loses. It does not tell us that the board of revision's value wins. In every case, the BTA must conduct a de novo review of the evidence and independently determine the taxable value of the property. *Columbus Bd. of Edn.* at 15; *Vandalia-Butler*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, at ¶ 13-14, 19.

{¶ 64} Although the board of revision is not entitled to automatic deference, this court could still adopt the board of revision's valuation if the court independently found that the record supports the board of revision's decision. *Vandalia-Butler* at ¶ 21 (the board of revision's value may be adopted "*if and only if*" the evidence is independently found to support the board of education's value [emphasis sic]); *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, ¶ 15. But the majority does not make any such finding. To the contrary, it openly declines to consider whether East Bank's appraisal methods were appropriate. Majority opinion at ¶ 27, fn. 1. The end result is puzzling: the majority refuses to analyze whether East Bank's appraisal was valid, but then—without explanation—accepts the appraisal as valid.

{¶ 65} Ultimately, the majority could not adopt East Bank's valuation based on deference to the board of revision, and it did not adopt East Bank's valuation based on its own analysis of the evidence. Furthermore, I agree with the chief justice that if the majority had reviewed the evidence, it would find that East

Bank's appraisal method was not valid. Accordingly, our precedent compels a remand to the BTA.

## CONCLUSION

{¶ 66} I concur in the majority's holding that the board of education had to support the auditor's valuation with additional evidence. I also agree that because the board of education did not produce more evidence, it did not meet its burden of proof. I respectfully dissent from the majority opinion to the extent that it holds that the board of education was required to produce more evidence as a general rule. The additional support is required in this case only because the auditor's appraisal was deficient on its face. I also respectfully dissent from the majority's adoption of East Bank's valuation. There is no basis for adopting East Bank's valuation, and the majority offers none. We should vacate the BTA's decision and remand for the BTA to conduct an independent determination of value.

O'CONNOR, C.J., and LANZINGER, J., concur in the foregoing opinion.

_____

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, Jeffrey A. Rich, and Karol C. Fox., for appellee Dublin City Schools Board of Education.

Zeiger, Tigges & Little, L.L.P., Marion H. Little Jr., and Matthew S. Zeiger, for appellant.

_____