VANDALIA-BUTLER CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.*

MONTGOMERY COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision,* 130 Ohio St.3d 291, 2011-Ohio-5078.]

*Taxation—Real-property valuation—Board of Tax Appeals erred in deferring to Board of Revision's decision to order the value reduction, rather than relying on its own independent valuation of the evidence as required by law—Decision of Board of Tax Appeals vacated, and cause remanded.*

(No. 2009-1763—Submitted August 8, 2011—Decided October 5, 2011.)

APPEAL from the Board of Tax Appeals, No. 2007-M-1022.

_____

**Per Curiam.**

**{¶ 1}** In this appeal the Vandalia-Butler City Schools Board of Education ("school board") challenges a decision of the Board of Tax Appeals ("BTA") in which the BTA affirmed and adopted the Montgomery County Board of Revision's ("BOR's") reduced valuation of a hotel. The school board contends that the BTA erred by according deference to the BOR's decision rather than relying on its own independent weighing of the evidence.

**{¶ 2}** We agree with the school board. We therefore vacate the BTA's decision and remand so that the BTA can determine whether there is sufficient evidence to permit it to perform an independent valuation of the property.

**Facts**

**{¶ 3}** The property at issue consists of 1.8210 acres improved with a 32,060-square-foot hotel. The auditor assigned a true value of $2,096,320 for tax year 2006. The owner, Bajarangi Corporation, filed a complaint against valuation on March 28, 2007, seeking a reduction of true value to $1,468,000. The school

board filed a countercomplaint seeking to retain the auditor's valuation. Prior to the BOR hearing, Ratilal Patel, who identified himself as the owner and president of Bajarangi, submitted a letter dated March 9, 2007, setting forth general contentions in support of the complaint and attaching an "[a]ppraisal report as of 2007."

{¶ 4} On August 2, 2007, the BOR held a hearing on the complaint. The record of that hearing consists of terse handwritten notes, which indicate that the owner presented an appraisal that certified an opinion of $1,488,000 "exclusive of FFE (i.e., the furniture, fixtures, and equipment)."[1] Patel appeared on behalf of the owner to present the appraisal and to offer testimony. According to the handwritten notes, Patel testified that "[h]otel performance [was] going down every year" and that the subject property had incurred "exorbitant expenses." The hearing notes assert that the property is "[c]urrently listed @ 1.5 million" and indicate that Patel would be "happy to sell @ 1.3 million." In June 2007, a prospective buyer offered $1.4 million, but the offer was contingent on $150,000 of improvements, and the deal fell through. The property was purchased in 2002 for $1.9 million, an allegedly fair price at that time. Occupancy was said to be approximately 35 percent.

{¶ 5} The notes reflect that the school board objected to the appraisal report as hearsay "because the appraiser wasn't here to question." The notes then state that "P&L" (presumably profit and loss) documentation is contained in the appraisal report and that the occupancy rate was 46 percent "[w]hen purchased."

{¶ 6} The BOR's September 7, 2007 decision is documented by the hearing notes. The BOR decided to assign a value of $1,499,080 to the property,

---

1. A board of revision must "take full minutes of all evidence given before the board, and it may cause the same to be taken in shorthand and extended in typewritten form." R.C. 5715.08. When a board of revision elects to preserve the hearing in the form of minutes without preparing a transcription or maintaining an audio record of the proceedings, that decision potentially affects the ability of the BTA to evaluate the evidence presented to the board of revision, since the BTA will have a mere summary rather than the actual testimony in its full extent.

"per CLT review & recommendation." At oral argument, counsel for the county explained that "CLT" refers to the appraisal firm used by the county in valuing real property. The notes do not reflect any ruling on the school board's objection to the appraisal.

{¶ 7} On one page of the property-record card, handwritten numbers appear that are apparently intended to substitute for the printed numbers used in determining value under the income approach. Specifically, the "ECO ADJ" figure of 84 percent under "EST ECONOMIC INCOME" was crossed out and changed to 75.8 percent, while the 100 percent "ECO ADJ" figure under "VACANCY AND CREDIT LOSS" was changed to 20 percent. Finally, under "OPERATING/DEPARTMENTAL EXPENSES," the "ECO ADJ" figure is changed from 100 percent to 90 percent. There are no such handwritten notations on the separate page that reflects the ultimate determination of value according to the income approach.

{¶ 8} The school board appealed to the BTA, and the BOR certified a record that did not include the appraisal report referred to in the hearing notes. On December 19, 2008, the BTA held a hearing at which only the school board appeared. At that hearing, counsel for the school board argued that "there was insufficient evidence to support the reduction in value." The school board also filed a brief at the BTA, renewing its claim of insufficient evidence and expressing its concern that "even though the BOR excluded the appraisal from the record, the BOR's notes indicate that it still relied upon the report in reducing the value of the subject property." The brief additionally pointed out that the taxpayer had informed the BOR that the appraisal report valued the property "as of" 2007 rather than as of the tax-lien date, January 1, 2006.

{¶ 9} On September 1, 2009, the BTA issued its decision. The BTA canvassed the sparse evidence in the record. The board noted the handwritten notations on the property-record card and stated that the "modifications reduce the

annualized potential gross rent and 'ECO' adjustments, apparently consistent with the testimony presented at the BOR hearing." *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision* (Sept. 1, 2009), BTA No. 2007-M-1022, at 3, 5. The BTA then noted that the school board "presented no evidence contradicting the loss of income suffered by the property or the adjustments made by the BOR." Id. at 5. After reviewing case law, the BTA articulated the issue as whether there was sufficient evidence to support the BOR's reduction in value. Id. at 7.

{¶ 10} As for the evidence itself, the BTA stated, "[W]e would find little evidentiary support for the BOR's value herein." Id. at 6. The board then characterized the record as containing "limited evidence to support the valuation adopted by the BOR" and described that evidence as being of a type previously rejected by the board. Id. at 7. In spite of these deficiencies in the evidence, the BTA ultimately adopted the BOR's valuation. The stated grounds for doing so were twofold. First, the "BOR saw fit to reduce the subject's valuation, while not to the value opined by the property owner, but to a value lower than that which the auditor had determined." Id. Second, "the auditor must have conceded to the reduced valuation for the subject, since there is no indication in the record that the auditor attempted to defend and/or maintain the auditor's original valuation." Id.

{¶ 11} The school board has appealed, and we now vacate and remand.

**Analysis**

{¶ 12} The BTA is responsible for determining factual issues, but we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino* (2001), 93 Ohio St.3d 231, 232, 754 N.E.2d 789. In the present case, the school board asserts that the BTA erred by presuming the validity of the BOR's value determination rather than independently weighing the evidence to arrive at

4

its decision. In response, the county contends that because evidence presented to the BOR tended to negate the validity of the auditor's determination, the BTA could not revert to that valuation without contravening the holding of *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22 ("*Dayton*"). The dispute in this case therefore presents us with a claim of legal error by the school board as appellant and a claim by the county that legal principles dictated the decision that the BTA reached.

*I. The BTA erred by deferring to the BOR's determination rather than relying on its independent evaluation of the evidence.*

{¶ 13} We agree with the school board that the BTA failed to discharge its duty to base its decision on an independent weighing of the evidence. It is well settled that when the BTA reviews a board-of-revision decision based upon the record developed before that tribunal, the BTA has the duty to " 'independently weigh and evaluate all evidence properly before it' " in arriving at its own decision. *Hilliard City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 128 Ohio St.3d 565, 2011-Ohio-2258, 949 N.E.2d 1, ¶ 17, quoting *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 15, 665 N.E.2d 1098 (BTA must reach its "own independent judgment based on its weighing of the evidence contained in [the BOR] transcript"). Equally well established is the proposition that "decisions of boards of revision should not be accorded a presumption of validity." *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 23, citing *Columbus Bd. of Edn.* at 15 and *Springfield Local Bd. of Edn. v. Summit Cty. Bd. of Revision* (1994), 68 Ohio St.3d 493, 494, 628 N.E.2d 1365. Read in conjunction, these two principles foreclose the approach taken by the BTA in this case.

{¶ 14} Quite simply, the BTA's crucial error in this case lay in its exclusive reliance on the BOR's evaluation of the evidence rather than its own. The property owner, Bajarangi Corporation, sought a reduction in value and presented oral testimony by Patel and an appraisal report at the BOR hearing. The BTA's evaluation of this evidence was decidedly negative: the board stated, "[W]e would find little evidentiary support for the BOR's value herein," BTA No. 2007-M-1022 at 6, characterized the record as containing "limited evidence to support the valuation adopted by the BOR," and pronounced the evidence to be of a type that the board had previously rejected. Id. at 7. In deciding to retain the value found by the BOR, the BTA placed sole reliance on the bare fact that "the BOR saw fit to reduce the subject's valuation, while not to the value opined by the property owner, but to a value lower than that which the auditor had determined," along with the lack of any "indication in the record that the auditor attempted to defend and/or maintain the auditor's original valuation." Id. at 7. [2] In other words, even though the BTA itself was unpersuaded by the evidence, it adopted the BOR's reduction of value on the grounds that the BOR *was* persuaded. That constitutes the very deference that the case law prohibits.

{¶ 15} Moreover, although Bajarangi Corporation presented not only Patel's testimony but also an appraisal report, the report was objected to, and the BOR did not include it in the certified record to the BTA. Nonetheless, the BOR may have used it in arriving at its determination of the value of the property—*an option not open to the BTA*, which did not have the appraisal report before it. In addition to the fact that the BTA did not have before it a piece of evidence that

---

2. The BTA fails to explain why it believes that the auditor's action or inaction in relation to the adoption of a new value is important. The record does not disclose whether the auditor or his delegate voted in favor of reducing the value of the property at issue, but that vote is not necessarily material. The school board (not the auditor) instigated the appeal to the BTA, and the BTA's duty was to determine the value of the property based on the evidence. A vote by the auditor to depart from his initial valuation would not by itself establish that the initial valuation was wrong or that the reduced value was correct.

may have been crucial to the BOR's value determination, the BTA also erred by adopting the BOR's valuation without addressing the hearsay objection.

{¶ 16} Finally, it is not insignificant that the BOR noted its reliance on "CLT review & recommendation." The county has explained that CLT is the "appraisal firm that assists the county auditor in setting property values." To the extent that the appraisal firm presented new evidence to the BOR, the BTA did not have the evidence itself before it, only a reference to it.

{¶ 17} In opposing the school board's argument, the county auditor and the BOR contend that the BTA "did perform its obligation to weigh and evaluate the evidence before the BOR, and did not merely presume that the BOR's decision was valid simply because the auditor failed to object to the decrease in value." While it is certainly true that the BTA discussed the evidence, we agree with the school board that the BTA ultimately did not reach a conclusion concerning the value of the property based on its own review of the evidence.

{¶ 18} Indeed, we find the county's interpretation of the BTA decision incompatible not only with the words actually set forth in that decision, but also with the absence of any specific explanation of how the value of $1,499,080 is supported by the evidence. The BOR itself did not offer such an explanation, and the BTA's own failure to supply one demonstrates the high degree to which it simply deferred to the BOR.

{¶ 19} In sum, the BTA erred by deferring to the BOR's decision to order the value reduction, rather than relying on its own independent evaluation of the evidence as required by case law.

*II. Case law requires the BTA to determine whether the record contains sufficient evidence to allow an independent valuation.*

{¶ 20} The county argues that the BTA acted reasonably and lawfully in determining that "sufficient" evidence supported the BOR's valuation, with the result that the BTA was bound by the determination of the BOR. This argument

rests upon the BTA's own misreading of the case law. Specifically, the BTA cited our decision in *Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, for the principle that the presence of "sufficient" evidence at the BOR required the BTA to defer to the BOR's valuation. BTA No. 2007-M-1022 at 7.

{¶ 21} The BTA was mistaken, and the county's argument has no merit. It is true that the *absence* of sufficient evidence requires the BTA to reverse a reduction or increase ordered by a board of revision. See *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 566-567, 740 N.E.2d 276. But it does not follow that the *presence* of a particular quantum of evidence requires the BTA to adopt the BOR's valuation. The BTA's duty, as previously discussed, is to reach its "own independent judgment based on its weighing of the evidence contained in the [board of revision] transcript." *Columbus Bd. of Edn.*, 76 Ohio St.3d at 15, 665 N.E.2d 1098. Put differently, the evidence for adopting the BOR's valuation could be "sufficient" for purposes of the BTA's review *if and only if* the BTA independently concluded that the evidence supports the very value found by the BOR. Here the language of the BTA's decision makes clear that the BTA reached no such independent conclusion.

{¶ 22} We must return this case to the BTA so that the BTA can apply the analysis we articulated in *Colonial Village,* 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196. In *Colonial Village*, we explained the larger framework of the BTA's duty when a valuation case has been appealed from a board of revision.

{¶ 23} Contrary to the BTA's decision and the county's argument, our earlier decision in *Bedford Bd. of Edn.*, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, must be construed and applied within that framework. In *Bedford*, the majority stated that the BTA erred "in reinstating the auditor's determination of value when the taxpayer had presented sufficient evidence to the BOR to

justify the reduction the BOR ordered." Id. at ¶ 15. The county defends the BTA's reading of *Bedford* and emphasizes the *Bedford* court's heavy reliance on *Dayton,* 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22. At oral argument, the county's counsel asserted that the evidence presented to the BOR foreclosed reverting to the auditor's original valuation because it tended to negate that valuation.

**{¶ 24}** Our decision in *Colonial Village,* 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, shows that the BTA and the county are mistaken. Even if some evidence tends to negate the auditor's original valuation, it is proper to revert to that valuation when the BTA finds that the owner has not proved a lower value *and there is otherwise "no evidence from which the BTA can independently determine value."* (Emphasis added.) *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 49, 689 N.E.2d 22. In *Simmons,* this court held that when a board of revision retained the auditor's valuation and the BTA rejected the owner's evidence of a lower value, the BTA could properly "approve the board of revision's valuation, without the board of revision's presenting any evidence."[3] In *Dayton*, we expressly distinguished *Simmons* and found that the record before us did contain sufficient evidence to permit the BTA to perform an independent valuation. *Dayton* at ¶ 15-16.

---

3. Our discussion also leads us to reject the county's contention that the school board had the burden to prove the validity of the auditor's valuation at the BTA. While it is true that the party that appeals to the BTA in a valuation case typically does bear the burden of showing a different value, see *Colonial Village*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23, the school board's appeal in this case rested upon a claim of legal error. In prosecuting such a claim, the appellant's burden is to show the presence of reversible error, and proof of a new value may not be necessary when the appeal seeks a return to the auditor's valuation. Id. at ¶ 31 (county does not "acquire the burden of proving the general accuracy of the appraisals on which [it] initially relied"); accord *FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision*, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 31, citing *Colonial Village* at ¶ 31 (auditor's initial determination of value for a given tax year "possesses an increment of prima-facie probative force").

**{¶ 25}** The *Bedford* court came to the same conclusion. Indeed, the disagreement between the majority and the dissent in *Bedford* centered on whether there was sufficient evidence to permit an independent valuation that would justify a reduction. *Bedford*, ¶ 15 (majority concludes that "the taxpayer had presented sufficient evidence to the BOR to justify the reduction the BOR ordered") and ¶ 18 (Moyer, C.J., dissenting) ("unlike in *Dayton*, there was no evidence before the Board of Tax Appeals that permitted an independent determination of value," and that deficiency in the evidence "justifie[d] the Board of Tax Appeals' reversion to the auditor's determination of value").

**{¶ 26}** In the present case, it follows that once the BTA had determined that the record contained evidence tending to negate the county's original valuation, the BTA's duty was to "determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property." *Colonial Village,* 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 25. When there is sufficient evidence to permit the BTA to perform an independent valuation—as in *Dayton* and *Bedford*—the BTA must do so. Id. But when there is not sufficient evidence to permit an independent valuation, the BTA may properly revert to the county's original determination of value, as in *Simmons*.

**{¶ 27}** The BTA erred by failing to determine whether sufficient evidence existed to permit an independent valuation of the property. To be sure, the BTA's discussion of the evidence indicates the board's dissatisfaction with the state of the record. Indeed, the complete absence of the proffered appraisal report and any analysis performed by CLT does leave gaps in the evidence before the BTA. But the existence of those gaps does not relieve the BTA from the obligation to independently weigh the evidence. [4]

---

4. The BTA noted that the BOR has the duty to preserve the evidence presented to it pursuant to R.C. 5715.08 and that the BOR should have certified the appraisal report as part of the record

**Conclusion**

**{¶ 28}** The BTA unlawfully accorded a presumption of validity to the BOR's determination of value. We therefore vacate the BTA's decision and remand for the BTA to conduct further proceedings in accordance with the foregoing opinion.

Decision vacated<br>and cause remanded.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

————————————

Rich & Gillis Law Group, L.L.C., Mark H. Gillis, and Karol Fox, for appellant.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Laura G. Mariani, Assistant Prosecuting Attorney, for appellees Montgomery County Board of Revision and Montgomery County Auditor.

————————————

---

pursuant to R.C. 5717.01. *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision* (Sept. 1, 2009), BTA No. 2007-M-1022, at 3-4, fn. 2. We agree. In particular, R.C. 5717.01 expressly requires that the BOR certify "all evidence offered in connection" with the valuation complaint. The criterion for inclusion is that the evidence was *offered*, not admitted, and that is significant given the de novo review at the BTA. Failure to certify the entire evidentiary record may prejudice the interest of the proponents of omitted items, and therefore, boards of revision should take care to comply with the statutory duty to certify the *entire* record. On remand, the BTA will confront the question whether to order that the appraisal report be certified by the BOR pursuant to R.C. 5717.01, along with the issue whether the appraisal ought to be considered at all in light of the hearsay objection.