O’Donnell, J.
{¶ 1} East Bank Condominiums II, L.L.C. (“East Bank”), appeals from a decision of the Board of Tax Appeals (“BTA”) reversing the property valuation of the Franklin County Board of Revision regarding 21 condominium units and reinstating the county auditor’s valuation of those condominium units as requested by the countercomplaints filed by the Dublin City Schools Board of Education. Many of the 21 units remained unfinished to varying degrees as of the 2008 tax lien date. Specifically, we are concerned with whether the BTA properly utilized the auditor’s valuation of the 21 units when the only evidence in the record appears to negate the auditor’s determination. Because the property owner presented expert evidence of valuation and because the board of education failed to present any evidence, we reverse the determination of the BTA and establish the 2008 valuation in accordance with the property owner’s evidence of $3,100,000.
Factual Background and Procedural History
{¶ 2} East Bank began construction of the East Bank II condominium complex in 2006. The business plan involved first completing the construction of the building’s infrastructure and then completing each of its 28 condominium units to suit the buyer. According to East Bank, as of January 1, 2008, the tax hen date, three of the 28 units were completed and sold, four units were finished but unsold, and 21 units remained unsold and unfinished.
*194 {¶ 3} The Franklin County auditor assessed the true value of each parcel individually for the tax year 2008 and determined that the aggregate true value of the 21 units was $8,139,300. East Bank objected and filed complaints for each of the unfinished and unsold units, challenging the valuation of the property with the board of revision. Subsequently, the school board filed countercomplaints seeking to retain the auditor’s valuation of the condominium units.
{¶ 4} At the board of revision hearing, East Bank presented the testimony of East Bank managing partner George Babyak, as well as the appraisal report and testimony of Thomas Horner. Although an attorney representing the board of education appeared at the board of revision hearing and cross-examined Babyak, the board of education did not present any witnesses or additional information regarding the valuation of the property.
{¶ 5} Thus, the only evidence of value presented at the hearing came from Horner’s appraisal and testimony. Using a “condominium analysis,” Horner opined that the 21 units had a “net present market value” or “as-is value” of $3,100,000. Horner testified that he considered the 21 units as a “single economic unit” because they are “owned by one owner” and “[tjhat owner can only sell all units at one time to one investor.” He utilized a comparable sales analysis using condominium sales and marketing activity of East Bank I and East Bank II and then made reductions based on the estimated cost to finish the remaining units. This analysis yielded “gross sale proceeds” of $6,492,294. Considering the units to be a “single economic unit,” Horner applied what he called a “bulk discount” to arrive at an estimated value of $3,100,000, which is approximately 48 percent of $6,492,294.
{¶6} After its review, the board of revision accepted Horner’s.valuation of $3,100,000 as the total fair market value for the 21 units, stating, “We were given no additional information on behalf of the county complainant school board in this matter, and * * * we recognize Mr. Horner as being an expert in the area of real estate appraisal.” The school board then appealed the board of revision’s decision to the BTA.
{¶ 7} At the BTA hearing, East Bank once again presented Babyak and Horner as witnesses. At that time, Horner had additional data from condominium sales occurring in the four-year period after the tax lien date. He testified to a revised cash flow analysis using the actual historical sales, which included investor discounts for some units ranging from $75,000 to $105,800. Taking into account the various investor discounts and the construction costs to complete the units, he retrospectively concluded that the cash flow analysis resulted in a value of $2,900,000.
*195 {¶ 8} Although the board of education’s attorney cross-examined Babyak and Horner during the BTA hearing, the school board did not present any witnesses, evidence of its own valuation, or evidence in support of the auditor’s valuation.
{¶ 9} After reviewing the evidence, the BTA concluded that East Bank “failed to present competent and probative evidence to either this board or the BOR in support of its requested decreases in value.” Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision, BTA Nos. 2009-Q-1282 through 2009-Q-1301 and 2009-Q-1408, 2012 WL 3166815, *6 (July 24, 2012). Specifically, the BTA found that Horner’s use of the bulk discount was improper under MU Homes of Cincinnati, L.L.C. v. Warren Cty. Bd. of Revision, BTA No. 2009-V-3796, 2010 WD 3724159 (Sept. 21, 2010). Id. at *5. It further determined that it could not rely on the rest of Horner’s appraisal report for multiple reasons. Id. First, the BTA took issue with the fact that Horner’s calculation of each parcel’s value was based on comparable sales of units within East Bank I and East Bank II, but the report contained withdrawn listings and listing prices — not sale prices — of the East Bank I units. Id. Second, it found no evidence that the “cost to finish,” which Horner deducted from each unit’s estimated retail price, conformed to market costs. Id. And third, in response to East Bank’s argument that the auditor had assessed the units as finished units as opposed to unfinished units, the BTA held that it could not make the appropriate adjustments to the valuation since there was no evidence as to the completion percentage of each unit. Id. at *6. It therefore reversed the board of revision’s adjustments and reinstated the auditor’s valuation of the 21 units. Id.
{¶ 10} East Bank appealed the BTA’s decision to this court, contending first that the BTA’s decision is unlawful and unreasonable because it reverted to the auditor’s value when the board of education had introduced no evidence in support of the auditor’s valuation. Second, East Bank argues that the BTA did not hold the board of education to its burden of proof and that it improperly shifted the burden of proof to East Bank. Third, East Bank asserts that the BTA erred as a matter of law by precluding the use of bulk discount factors in East Bank’s valuation and that the BTA acted unreasonably and unlawfully by not valuing the 21 units as a single economic unit. Next, East Bank maintains that the record demonstrates that the units were unfinished on the tax lien date and also establishes the costs to complete the units, and it urges that the BTA acted unreasonably and unlawfully in not applying a discount based upon unfinished property. Finally, East Bank argues that the BTA abused its discretion in rejecting the board of revision’s determination that East Bank presented the requisite evidence of value.
{¶ 11} In response, the board of education asserts that Horner’s appraisal is an “investment value appraisal,” which “does not constitute competent and probative *196 evidence of the true value of real property.” The board of education further argues that because East Bank did not satisfy its initial burden to prove that Horner’s appraisal evidenced the true value of the property, the BTA did not improperly shift the burden of proof to East Bank. The board of education also maintains that “[t]he BTA is not required to accept the opinion of an appraiser concerning the cost to finish a condominium unit without any facts or figures to support that opinion or that the true value of the unit must be reduced on a dollar-for-dollar basis by the amount of the costs to finish the unit.”
{¶ 12} Thus, we must decide whether the BTA properly reinstated the auditor’s valuation of the condominium units at issue.
Standard of Review
{¶ 13} Pursuant to R.C. 5717.04, this court reviews decisions of the BTA to determine whether they are “reasonable and lawful.” Our review of a question of law is not deferential but de novo. Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. This court will affirm a decision of the BTA only if the BTA correctly applies the law. HIN, L.L.C. v. Cuyahoga Cty. Bd. of Revision, 124 Ohio St.3d 481, 2010-Ohio-687, 923 N.E.2d 1144, ¶ 13. And, we will uphold the BTA’s determination of fact if the record contains reliable and probative evidence supporting the BTA’s determination. Satullo v. Wilkins, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14.
Burdens of Proof
{¶ 14} We have established that the taxpayer bears the burden to establish the right to a deduction and a taxpayer is “ ‘not entitled to the deduction claimed merely because no evidence is adduced contra his claim.’ ” Daytom-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 15, quoting W. Industries, Inc. v. Hamilton Cty. Bd. of Revision, 170 Ohio St. 340, 342,164 N.E.2d 741 (1960).
{¶ 15} When a party appeals a board of revision’s decision to the BTA, the appellant, whether it be a taxpayer or a board of education, has the burden to prove its right to a reduction or increase in the board of revision’s determination of value. Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). To prevail on appeal before the BTA, the appellant must present “competent and probative evidence” supporting the value the appellant asserts. Id.
{¶ 16} In this case, East Bank had the burden to prove its right to a reduction when it challenged the auditor’s valuation of the 21 units before the board of revision. See Dayton-Montgomery at ¶ 15. To meet this burden, East Bank presented testimony from its managing partner and an appraiser. The board of *197 revision adopted East Bank’s valuation, thereby shifting the burden of going forward with evidence to the board of education on appeal to the BTA to present “competent and probative evidence to make its case.” Columbus City School Dist. at 566. However, the board of education did not present any evidence to support its own valuation or the auditor’s valuation and instead chose to attack Horner’s valuation through cross-examination. The board of education thereby failed to sustain its burden. Since the board of education failed to meet its burden on appeal and the only evidence in the record — the testimony of Babyak and Horner — negates the auditor’s determination, we now turn to the question of whether the BTA acted reasonably and lawfully by reinstating the auditor’s valuation.
Reinstatement of the Auditor’s Valuation
{¶ 17} In FirstCal Indus. 2 Acquisitions, L.L.C. v. Franklin Cty. Bd. of Revision, 125 Ohio St.3d 485, 2010-Ohio-1921, 929 N.E.2d 426, ¶ 31, we explained: “[T]he auditor’s initial determination of value for a given tax year possesses an increment of prima-facie probative force.” But, when a taxpayer presents evidence contrary to the auditor’s valuation and no evidence is offered to support the auditor’s valuation, the BTA may not simply reinstate the auditor’s determination. Daytork-Montgomery, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 27; Bedford Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, ¶ 11-12. Instead, “once the BTA had determined that the record contained evidence tending to negate the county’s original valuation, the BTA’s duty was to ‘determine whether the record as developed by the parties contain[s] sufficient evidence to permit an independent valuation of the property.’ ” Vandaliar-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 26, quoting Colonial Village, Ltd. v. Washington Cty. Bd. of Revision, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298 (“Colonial Village /”), ¶ 25. Here, the board of education produced no evidence to support its valuation or the auditor’s valuation of the units, nor did it identify the procedures or methods the auditor used in valuing those units.
{¶ 18} In Dayton-Montgomery, the port authority challenged the auditor’s valuation before the board of revision, which slightly decreased the value of the property. After rejecting the port authority’s valuation as “incomplete” and the board of revision’s adjustment as lacking a “credible explanation,” the BTA had reinstated the auditor’s valuation. Id. at ¶ 9. In reversing, we held that
when the evidence presented to the board of revision or the BTA contradicts the auditor’s determination in whole or in part, and when no evidence has been adduced to support the auditor’s valuation, the BTA may not *198 simply revert to the auditor’s determination. Whenever it does so, the BTA is acting unlawfully by making a finding of value that is affirmatively contradicted by the only evidence in the record.
Id. at ¶ 27.
{¶ 19} We reaffirmed this principle in Bedford. Relying on our holding in Daytorir-Montgomery, we found that the BTA’s reinstatement of the auditor’s determination of value as the default value was “not justified, because the taxpayer had presented evidence contrary to the auditor’s determination to the board of revision.” Bedford at ¶ 12. We found that the evidence the board of education presented on appeal to the BTA, which simply consisted of testimony suggesting that the parcel at issue should be valued not individually but instead in conjunction with other parcels, “did not amount to independent evidence of value that would undermine the BOR’s determination” and “did not support reinstating the auditor’s valuation, because the auditor did not value the property in conjunction with other parcels any more than the BOR did.” Id. at ¶ 13.
{¶ 20} During oral argument, the board of education directed the court to our decision in Colonial Village, Ltd. v. Washington Cty. Bd. of Revision, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196 (“Colonial Village IF), to assert that if the evidence presented is not reliable and is not probative, then the BTA should revert to the auditor’s valuation as the default value. The board of education’s application of Colonial Village II to this case is misplaced. First, the facts of Colonial Village II are distinguishable from the facts of this case because there, the board of revision initially adopted the auditor’s valuation. Id. at ¶ 18. Thus, after finding that the taxpayer had not met its burden on appeal, the BTA affirmed the conclusion of the board of revision in reinstating the auditor’s valuation. In contrast, here, the board of revision adopted the taxpayer’s valuation. Since East Bank presented competent, credible evidence of valuation and other evidence negating the auditor’s valuation and the board of education did not present any evidence to support its valuation or the auditor’s valuation, the BTA abused its discretion in reinstating the auditor’s valuation. Second, the board of education fails to recognize that while we stated in Colonial Village II that “the BTA is justified in retaining the county’s valuation of the property when an appellant fails to sustain its burden of proof at the BTA,” id. at ¶ 23, we then acknowledged that an exception to this general rule arises when the record affirmatively negates the validity of the county’s valuation. Id. at ¶ 24. This case falls under that exception as well because East Bank established a different valuation and the board of education offered no evidence to support its valuation or the auditor’s valuation.
*199 {¶ 21} As in Dayton-Montgomery and Bedford, the BTA’s reinstatement of the auditor’s valuation was “not justified, because the taxpayer had presented evidence contrary to the auditor’s determination to the board of revision.” Bedford, 115 Ohio St.3d 449, 2007-Ohio-5237, 875 N.E.2d 913, at ¶ 12. In Vandalia-Butler, we clarified our holding in Bedford and explained: “Even if some evidence tends to negate the auditor’s valuation, it is proper to revert to that valuation when the BTA finds that the owner has not proved a lower value and there is otherwise ‘no evidence from which the BTA can independently determine value.’ ” (Emphasis deleted.) Id., 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, at ¶24, quoting Simmons v. Cuyahoga Cty. Bd. of Revision, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998). But here, evidence existed from which the BTA could independently determine value. It is clear from a review of the record that the auditor’s valuation of the property was too high. Specifically, there is no evidence indicating that the auditor accounted for the unfinished state of the units or the units’ depreciation in value due to market conditions, and the historical sales evidence provided by East Bank further contradicts the auditor’s valuation.
{¶ 22} Under Ohio law, “[i]f á building, structure, fixture or other improvement to land is under construction on January first of any year, its valuation shall be based upon its value or percentage of completion as it existed on January first.” (Emphasis added.) Ohio Adm.Code 5703-25-06(G). East Bank asserts that the majority of the 21 units were 50 percent complete, two units were 60 percent complete, and two units were 80 percent complete.
{¶ 23} In response to East Bank’s argument that the auditor assessed the units based on the full finished retail value of the units, the BTA held that “no evidence has been provided as to the completion percentage of each unit to allow this board to make appropriate adjustments to the properties’ values.” (Emphasis added.) Dublin City Schools Bd. of Edn., 2012 WL 3166815, at *6. But this finding of the BTA contradicts the record, which contains evidence of completion percentages of the units. East Bank provided competent evidence as to the completion percentages. Horner accounted for these in his appraisal, and both Horner and Babyak testified regarding the unfinished state of the units. In addition, a review of the property record cards indicates that the auditor considered 16 of the units to be only 85 percent complete as of the tax lien date. However, the record is unclear as to whether the auditor made, adjustments for the costs for completion in his valuation. Since the record contains evidence regarding the completion percentages and there is no evidence to demonstrate that the auditor actually factored the completion percentages into the assessed valuation, the BTA acted unreasonably and unlawfully in reinstating that valuation.
*200 {¶ 24} There is also no indication that the auditor considered the property’s depreciation in value due to the downturn in the economy. Horner’s appraisal provides a “Residential Market Summary,” which explains the substantial drop in “residential activity” for condominiums and single family homes between 2006 and 2007. Horner also testified that “[b]etween the time that this building was proposed, planned and built, the market dropped significantly.” Further demonstrating the difficult market, East Bank in 2008 considered selling the entire building, including the 21 condominium units at issue, because of the downturn in the economy. East Bank did not pursue the informal offers it received ranging from $1.5 million to $3 million, because these amounts would not have covered the loan value. Considering the market conditions presented before the board of revision and the BTA and the absence of any evidence in the record addressing whether the auditor took those market conditions into account, additional grounds exist for determining that the BTA unreasonably adopted the auditor’s valuation.
{¶ 25} Lastly, the actual historical sales raise doubt as to the accuracy of the auditor’s valuation. Many of the sales of East Bank II condominiums occurring after the tax lien date involved investor discounts ranging from $75,000 to $105,800. Using these sales figures and the actual construction costs to complete the units, Horner opined at the BTA hearing that the cash flow analysis resulted in a value of $2,900,000. This evidence further demonstrates that the auditor’s valuation does not reflect the true market value.
{¶ 26} When confronted with such clear evidence negating the auditor’s valuation, the BTA acted unreasonably and unlawfully in adopting the auditor’s valuation rather than determining the taxable value of the property. It acted “unlawfully by making a finding of value that is affirmatively contradicted by the only evidence in the record.” Dayton-Montgomery, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, at ¶ 27.
Conclusion
{¶ 27} When a board of revision adopts the valuation of property presented by the taxpayer over the auditor’s valuation, the burden shifts to the contesting party on appeal to demonstrate the true value of the property. When the party challenging a board of revision’s determination fails to present any evidence supporting its valuation or the auditor’s valuation and the only evidence in the record negates the auditor’s valuation, the BTA must determine if there is sufficient evidence in the entire record for the BTA to perform an independent analysis. Here, the board of education did not present any evidence before the board of revision or the BTA. Thus, it failed to meet its burden. Because the evidence in the record negated the auditor’s valuation of the East Bank property and because evidence existed from which the BTA could have conducted its own independent valuation, it acted unreasonably and unlawfully in failing to do so *201 and in instead reinstating the auditor’s valuation. Accordingly, we reverse the determination of the BTA and adopt the only evidence of valuation contained in the record presented by East Bank through its expert, resulting in a valuation of $3,100,000.[1]
Judgment accordingly.
Pfeifer, Kennedy, and O’Neill, JJ., concur.
O’Connor, C.J., and Lanzinger and French, JJ., concur in part and dissent in part.

. We need not consider whether the bulk sale approach was appropriate in this instance because we determine that the BTA acted unreasonably and unlawfully in not conducting its own independent valuation of the property taking into account the unfinished state of some, if not all, of the units, the depreciation in value, and the sales history.