[Cite as *Eastbrook Farms, Inc. v. Warren Cty. Bd. of Revision*, 2018-Ohio-2886.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| EASTBROOK FARMS, INC., | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2017-12-171 |
| | : | O P I N I O N |
| - vs - | | 7/23/2018 |
| | : | |
| WARREN COUNTY BOARD OF REVISION, et al., | : | |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

ADMINISTRATIVE APPEAL FROM THE OHIO BOARD OF TAX APPEALS
Case No. 2016-1790

Coolidge Wall Co., L.P.A., Jonas J. Gruenberg, W. Chip Herin III, 33 West First Street, Suite 200, Dayton, Ohio 45402, for appellant

David P. Fornshell, Warren County Prosecuting Attorney, Christopher A. Watkins, 520 Justice Drive, Lebanon, Ohio 45036, for appellees, Warren County Board of Revision and Warren County Auditor

David C. DiMuzio, Matthew C. DiMuzio, 810 Sycamore Street, Sixth Floor, Cincinnati, Ohio 45202, for appellee, Springboro Community City Schools Board of Education

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Eastbrook Farms, Inc. appeals from the decision of the Board of Tax Appeals concerning the valuation of Eastbrook's real property. For the reasons discussed below, this court affirms the board's decision.

{¶ 2} Eastbrook owns approximately 83 acres of vacant land located on State Route 73 in Springboro, Ohio. Twenty acres are zoned residential with the remaining 63 acres zoned "O" for office development. For the 2015 tax year, the Warren County Auditor valued the property at $3,191,620. Eastbrook filed a complaint with the Warren County Board of Revision (BOR) and asked for a reduction in value. Springboro Community City Schools Board of Education (Springboro), filed a counter-complaint asking the BOR to maintain the appraised value.

{¶ 3} At the BOR hearing, Eastbrook presented the report and testimony of its appraiser, Stephen Weis. Weis valued the property at $1,792,000. Weis opined that the residential land had a value of $40,000 per acre. Weis determined that 13.5 acres of the office-zoned acreage was in a flood zone and was unusable and he assigned this portion of the property no value. Weis valued the remaining office land at $20,000 per acre, which he based on a comparison to other property sales.

{¶ 4} The Auditor's appraiser testified at the hearing and was critical of various aspects of Weis' appraisal. The Auditor's appraiser also testified about the methodology used to derive the Auditor's appraised value. The BOR found that the Auditor's valuation was justified and denied Eastbrook's complaint. Eastbrook then appealed to the Board of Tax Appeals (BTA).

{¶ 5} At the BTA hearing, Springboro presented the report and testimony of its appraiser, James Burt. Burt valued the property at $3,325,000. Burt agreed that the residential portion of the land should be valued at $40,000 per acre. However, Burt valued the office portion at $42,000 per acre, including the acreage located in the flood zone. Burt opined that the flood zone was useable as "green space, storm water management, amenities, etc."

{¶ 6}  Eastbrook's counsel cross-examined Burt concerning a portion of his report that indicated that the office-zoned acreage could be improved with up to 75,000 square feet of "supporting retail."  The issue of whether retail was a permitted use under the applicable zoning and whether Burt appraised the property for retail development became a point of contention during the BTA hearing.  Eastbrook repeatedly sought to establish, through testimony and argument, that the "O" office zoning for the property did not permit retail development.

{¶ 7}  Eastbrook called Weis for rebuttal testimony.  Weis explained that the land use plan for the area in which the property was located envisioned 75,000 square feet of retail development.  In other words, the property was located in an area in which the city planners of Springboro anticipated developing some retail, but Eastbrook could not develop retail without a zoning change.  Other evidence adduced at the hearing indicated that a zoning change was unlikely given Eastbrook's earlier unsuccessful attempts to have the property re-zoned by the city of Springboro to permit retail development.  *See Eastbrook Farms, Inc. v. City of Springboro*, Warren App. No. CA2003-08-080, 2004-Ohio-1377.

{¶ 8}  Springboro called Burt for rebuttal testimony.  Burt testified that he did not value the property based on retail development and that his sales comparisons consisted of office and or institutional-type developments.

{¶ 9}  After the evidentiary portion of the hearing, Eastbrook sought leave to submit a document containing a table of permitted uses for the different zoning districts in Springboro.  This chart is part of the Springboro zoning code.[1]  The BTA attorney examiner indicated that the parties could submit additional evidence if both parties agreed.

{¶ 10} The BTA issued a decision finding Burt's appraisal more competent and

---

1.  City of Springboro Codified Ordinance 1263.04

probative than Weis' appraisal and found that the property was worth $3,325,000. With respect to the chart Eastbrook sought to submit, the BTA concluded that the parties had not agreed on submitting additional evidence and therefore it would not consider the chart. Regarding the zoning issue, the BTA found that while there had been much discussion during the hearing as to whether retail development was permitted, the issue was unnecessary for consideration because "neither appraisers nor any of the parties advocated for retail use" of the property. In this appeal, Eastbrook raises three assignments of error, which we address out of order for ease of analysis.

{¶ 11} Assignment of Error No. 2:

{¶ 12} THE BTA ACTED UNREASONABLY AND UNLAWFULLY IN CONCLUDING THAT THE BOE'S APPRAISAL WAS MORE PROBATIVE THAN EASTBROOK'S APPRAISAL.

{¶ 13} Eastbrook argues that the BTA acted unreasonably in finding Burt's appraisal more probative of the value of the property than Weis' appraisal because Burt appraised the property as if it was zoned for up to 75,000 square feet of retail development. Springboro contends that Burt did not value the property for retail development but properly valued it for office development.

{¶ 14} The standard of review of a BTA decision is whether the decision was reasonable and lawful. R.C. 5717.04; *Herr v. Tracy*, 12th Dist. Butler No. CA96-10-212, 1997 Ohio App. LEXIS 1697 (Apr. 28, 1997). Questions of law are reviewed de novo. *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 193, 2013-Ohio-4543, ¶ 13. The BTA's valuation of real property – its determination of fair market value – is a question of fact. *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 112 Ohio St.3d 309, 2007-Ohio-6, ¶ 22. The BTA's factual decisions are upheld "if the record contains

reliable and probative evidence supporting the BTA's determination." *Dublin* at ¶ 13, citing *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, ¶ 14.

{¶ 15} The standard for reviewing the BTA's determination of the credibility of witnesses and the weight to be given their testimony is abuse of discretion. *NWD 300 Spring, L.L.C. v. Franklin Cty. Bd. of Revision*, 151 Ohio St. 3d 193, 197, 2017-Ohio-7579, ¶ 14. To find an abuse of discretion would require us to find an arbitrary or unconscionable attitude below. *Id.*, citing *Renacci v. Testa*, 148 Ohio St.3d 470, 2016-Ohio-3394, ¶ 32.

{¶ 16} Eastbrook cites an Ohio Supreme Court case in which the court held that the BTA acted unreasonably in relying on an appraiser who valued a property based on for its highest and best use – office development – even though it was zoned residential and appeared unlikely to be re-zoned to office. *Porter v. Cuyahoga Cty. Bd. of Revision*, 50 Ohio St.2d 307 (1977). The court held that "[i]n determining the value of property for tax assessment purposes, the taxing authority may not consider an appraisal of property in which the appraiser, believing the property to be more valuable than its permitted uses under current zoning laws indicate, values the property as if it were already zoned for its most profitable use." *Id.* at syllabus.

{¶ 17} Burt's report summarized his conclusions concerning the highest and best uses of the property. In so doing, Burt examined the "legally permissible," "financially feasible," and "maximally productive," uses of the property. With respect to the legally permissible uses, Burt noted that "[u]nder the land use plan the O-Office portion of the site can be developed with up to 75,000 square feet of supporting retail uses."

{¶ 18} Burt further opined that the financially feasible use of the property was "to hold for development of one larger office/institutional use or subdivide the site into smaller tracks for several larger office or institutional users to reduce carrying costs of infrastructure

improvements. Supporting retail would be constructed at the entrances along W Central Avenue and Clearcreek-Franklin Road." Finally, Burt concluded that the maximally productive use of the property was "immediate development of the [residential] zoned sites with a single-family residential use and larger office/medical office or institutional uses [at the office] site."

{¶ 19} The mention of supporting retail in Burt's report became a focal point of Eastbrook's hearing strategy before the BTA. During his testimony Burt appeared confused as to whether retail development was permitted by the zoning or merely envisioned by the area's land use plan. However, in his rebuttal testimony, Burt stated that he did not appraise the property for retail development. In this regard, Burt testified that the comparable properties he used to determine his appraised value were those where the highest and best use of the properties was office and institutional developments and not retail.

{¶ 20} This court finds that the BTA did not act unreasonably in relying on Burt's appraisal. Burt's report noted that the land use plan for the area included retail development, a fact that Weis agreed with and expanded upon during his testimony. Both agreed that the land use plan called for up to 75,000 square feet of retail development in the *area*. Burt may have misunderstood whether retail development was currently permitted at the property. However, any confusion on this issue is irrelevant because there is no credible evidence that any alleged misunderstanding affected Burt's appraisal. The four properties Burt used to form an opinion as to the appraised value did not have retail development and there is no indication that Burt made an upward adjustment to the appraisal figure because of supporting retail. The report stated that no adjustments were necessary for zoning. Moreover, Burt's valuation of the property was on the lower range of the four comparable sales.

{¶ 21} This case is not like *Porter* because Burt properly based his valuation on

comparisons to other similarly zoned office or institutional developments. This is not a case where Burt erroneously speculated that the city had or would approve a retail zoning change and then used retail development sales comparisons to provide Springboro with an inflated valuation. This court further notes that Burt's appraisal was substantially the same as the Auditor's earlier appraisal. Accordingly, this court overrules Eastbrook's second assignment of error.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE DECISION OF THE BTA IS UNREASONABLE AND UNLAWFUL BECAUSE IT IS CONTRARY TO THE WEIGHT OF EVIDENCE IN THE RECORD.

{¶ 24} Eastbrook argues that the decision to value the property based on Burt's appraisal was against the weight of the evidence. Eastbrook contends that the sale comparisons chosen by Burt were either unique transactions by institutional purchasers or special-use properties that were not comparable to the anticipated use of Eastbrook's property. Again, this court defers to the BTA on its determination of factual issues and choice of appraisal if supported by the record. *Strongsville*, 112 Ohio St.3d 309, 2007-Ohio-6, at ¶ 22; *Dublin*, 139 Ohio St.3d 193, 2013-Ohio-4543, at ¶ 13.

{¶ 25} This court does not find that the greater weight of the evidence supported the conclusion that Weis' appraisal was more probative of value than Burt's appraisal. The BTA reviewed, in detail, the comparable sales chosen by Burt and Weiss. Weis' appraisal primarily relied on sales of properties zoned for industrial use, which were significantly smaller than Eastbrook's property. However, Burt's comparable sales could be developed for office use and were similar in size. Finally, the BTA noted the most obvious concern with Weis' appraisal, which was that he attributed no value to 13.5 acres of land. In addition, Weis also made negative adjustments to four comparable sales to account for the

topography issues at Eastbrook's property. Substantial credible evidence supported the BTA's decision to find Burt's appraisal more probative and reliable than Weis' appraisal. This court overrules Eastbrook's third assignment of error.

{¶ 26} Assignment of Error No. 1:

{¶ 27} THE BTA ERRED BY DECIDING NOT TO CONSIDER A CHART OF PERMITTED AND PROHIBITED USES CONTAINED IN A ZONING LAW ON THE BASIS THAT THE CHART CONSTITUTED THE SUBMISSION OF ADDITIONAL EVIDENCE NOT ALREADY IN THE RECORD.

{¶ 28} Eastbrook argues that the BTA erred in declining to consider the zoning chart it submitted following the hearing. Eastbrook contends that the BTA erroneously considered the chart untimely evidence when it was relevant law. Eastbrook further argues that the error caused it prejudice because the chart demonstrated that the property was not zoned for retail development.

{¶ 29} After the BTA hearing, Eastbrook offered to provide the board with a chart of permitted uses for various zoning designations in Springboro. The BTA's attorney examiner stated that because the hearing ended the record was closed and therefore the parties would have to agree to supplement the record. However, the parties did not agree.

{¶ 30} Eastbrook and Springboro then filed post-hearing briefs. Each party appended documents to their briefs that had not been submitted into evidence at the hearing, with Eastbrook submitting the zoning chart and Springboro submitting documents related to the Springboro land use plan and the Springboro municipal code.

{¶ 31} In its decision, the BTA noted that these documents had not been provided at the hearing and neither party had agreed at the hearing to submit additional evidence. Accordingly, the BTA declined to consider any of the post-hearing documents submitted.

{¶ 32} Based on the BTA's determination that neither appraiser appraised the property for retail development and the lack of evidence that Burt's appraisal was affected by the issue of limited retail use, this issue is moot and unnecessary to address. App.R. 12(A)(1)(c). This court overrules Eastbrook's first assignment of error.

{¶ 33} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.